IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TROY EDWARD BUTTRAM, :
:
Plaintiff, :
:
vs. :
: CIVIL ACTION 12-0560-M
CAROLYN W. COLVIN, :
Commission of Social Security, :
:
Defendant. :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 18). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 26). Oral argument was waived in this action (Doc. 27). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-two years old, had completed a high school education (Tr. 37), and had previous work experience as a truck driver and logger (Tr. 57). In claiming benefits, Buttram alleges disability due to congenital lumbar stenosis, herniated nucleus pulposus with radiculopathy, spondylosis, peripheral neuropathy, facet arthrosis, obesity, diabetes mellitus, and gastroesophageal reflux disease (Doc. 18 Fact Sheet).

The Plaintiff filed protective applications for disability insurance and SSI on September 29, 2009 (Tr. 164-71; *see also* Tr. 16). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although Buttram could not return to his past relevant work, there were specific jobs that he could perform (Tr. 16-27). Plaintiff requested review of the hearing decision (Tr. 7-8) by the

Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Buttram alleges that: (1) The ALJ did not properly consider his complaints of pain; (2) the ALJ improperly discounted his testimony; and (3) the ALJ posed an incomplete hypothetical question to the vocational expert (hereinafter *VE*)[1] (Doc. 18). Defendant has responded to—and denies—these claims (Doc. 22). The relevant evidence of record is as follows.

On July 29, 2008, Plaintiff was seen by Dr. Bryan C. Delaney, his primary care physician at Family Practice Associates, for abdominal discomfort at night; the doctor noted that Buttram was obese but in no distress (Tr. 230; *see generally* Tr. 228-44). Lab testing demonstrated probable metabolic syndrome and possible early diabetes; Plaintiff was encouraged to diet and lose weight.

On August 8, 2008, Dr. Russell A. Hudgens, at Alabama Orthopaedic Clinics, examined Buttram for low back pain (Tr. 245; *see generally* Tr. 245-66). Plaintiff had mild myofascial tenderness in the lumbosacral junction and mild pain on straight leg raise testing; x-rays of the lumbar spine showed minimal degenerative changes. The Doctor's impression was lumbar pain,

[1]Plaintiff has framed these three claims as four claims in his brief (Doc. 18). The Court, however, has re-characterized the substance of those claims as only three.

strain, and degenerative disk disease. Buttram was given an injection of Toradol[2] with prescriptions for Flexeril[3] and Lortab.[4] On August 29, 2008, Plaintiff reported a work accident that had occurred three days earlier, causing upper back pain in addition to that in his lower back (Tr. 247). Orthopaedic Hudgens noted mild tenderness throughout the upper thoracic area as well as the lumbar area; there were no signs of neurological deficits or weakness. Buttram was given another Toradol injection and his Lortab prescription amount was increased. On September 4, Plaintiff complained of continuing lower back pain, radiating upward and into his right hip; the doctor noted localized tenderness at the lumbar region with some pain on palpation as well as percussion at the thoracolumbar junction (Tr. 249). Buttram was to remain off work for the time being. An MRI of the lumbar spine was performed on September 15, showing a mild annular bulge at L3-L4, a mild broad-based annular bulge at L4-L5, and a mild annular bulge with a right lateral protrusion at L5-S1, all creating mild central canal narrowing and foraminal encroachment or stenosis; also, there

---

[2]*Toradol* is prescribed for short term (five days or less) management of moderately severe acute pain that requires analgesia at the opioid level. *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

[3]**Error! Main Document Only.**Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions." *Physician's Desk Reference* 1455-57 (48th ed. 1994).

[4]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

were degenerative changes of the thoracolumbar junction (Tr. 251). At his next examination, on September 19, 2008, Dr. Hudgens told Buttram to continue with Flexeril and Lortab; he was to remain off work for another two-to-three weeks (Tr. 253). On October 9, the Orthopaedic noted that Plaintiff was in moderate discomfort on palpation of the lumbar area with mild pain on straight leg raise testing; Buttram received an epidural block, was to continue with his medication, and was not to return to work (Tr. 254). On November 4, Plaintiff complained of moderate lumbar pain, seven on a ten-point scale; Hudgens found tenderness and mild pain (Tr. 255). Plaintiff underwent a second epidural block. Three weeks later, the doctor found minimal pain on straight leg raise testing of only the left leg; the doctor's diagnosis was lumbar pain and stenosis and a congenital lumbar disk bulge at L5-S1 (T. 256). The December 16 examination revealed continued lumbosacral tenderness though there were no focal motor or sensory deficits in the lower extremities; Buttram was to continue medications and staying away from work (Tr. 257). On January 20, 2009, there was no change, even after a third epidural (Tr. 258; *see* Tr. 265). A month later, Plaintiff was experiencing moderate tenderness at the right sacroiliac area with mild pain on straight leg raise testing; he received a trigger point injection (Tr. 259). Dr. Hudgens noted that Buttram could not afford physical therapy.

On March 17, Plaintiff complained that the lower back pain was radiating into his right hip and leg; the doctor noted mild discomfort and sent him for a consultation (Tr. 260). On March 25, 2009, Dr. Tim Revels examined Buttram, finding him in no acute distress though he did have limited lumbar range of motion (hereinafter *ROM*); the doctor discussed various treatment options, including surgery while cautioning that he thought there was only a fifty percent chance at success, before giving him a prescription for Lyrica.[5] On May 7, Dr. Hudgens stated that he had no recommendations other than to continue conservative treatment; Plaintiff was to continue not working and taking his medications (Tr. 262).

From May 19 through August 19, 2009, Plaintiff was seen by Dr. Robert E. McAlister, Jr. for pain management (Tr. 267-83). Buttram was treated on six occasions, primarily at three-week intervals, during which he reported that his pain improved, if only minimally; Plaintiff received three lumbar-sacral facet blocks during this period as well.

On August 21, 2009, Buttram was seen by Dr. Delaney for a general checkup; Plaintiff complained of epigastric discomfort and burning paresthesias on the bottom of his feet (Tr. 230). Plaintiff stated that he was walking and swimming 1-2 times a

---

[5]*Lyrica* is used for the management of neuropathic pain. **Error! Main Document Only.** *Physician's Desk Reference* 2517 (62nd ed. 2008).

day. Delaney noted that Plaintiff had gained five pounds over the past thirteen months, was still obese, but in no distress; Buttram was encouraged to work on his diet (Tr. 231).

On August 25, 2009, Plaintiff said there were no changes in his back pain; Dr. Hudgens noted minimal tenderness across the lumbosacral area (Tr. 263). No prescriptions were given until he could see the report from Dr. Robert McAllister. On September 14, 2009, Dr. Charles E. Hall noted that he was examining Buttram for pain management at Dr. Hudgens's request; the doctor noted that Plaintiff was in no distress (Tr. 266). Cervical ROM was normal and sensation was intact; upper extremities revealed no motor deficits. Lumbar ROM was limited with extension and flexion; straight leg raise was equivocal on the right. There was tenderness in the paraspinal muscles in the lumbar; decreased motion was noted. Lortab and Lyrica prescriptions were continued.

On October 12, 2009, Orthopedist Hall conducted a follow-up examination of Buttram who was in no distress; the doctor continued prescriptions for Lortab and Lyrica (Tr. 301; *see generally* Tr. 289-309). On November 18, Plaintiff complained of continued pain in his back and right lower extremity, though he indicated that the Lortab helped; the doctor noted that Buttram appeared to be in no distress, that there were no definite motor deficits in the lower extremities, and that lumbar spine ROM

demonstrated decreased segmental motion (Tr. 298).

On December 1, 2009, Dr. Delaney noted that Plaintiff complained of stomach pain for four days for which he prescribed Darvocet[6] and Phenergan[7] (Tr. 285). A hepatobiliary scan revealed biliary dyskinesia with abnormally low gallbladder ejection fraction, suggesting chronic cholecystitis (Tr. 286).

On January 11, 2010, Dr. Hall continued the Lortab and Lyrica prescriptions (Tr. 297). On February 8, Buttram reported that he was doing well; the Orthopaedic noted no distress, no gross motor deficits in the lower extremities, intact sensation in L3 to S1, and that straight leg raise was mildly positive bilaterally (Tr. 295). The doctor recommended an epidural. On May 6, Plaintiff reported doing well; Hall noted lumbar spine ROM was limited with extension and continued the prescriptions (Tr. 293). On August 4, Buttram reported doing ok and that the medications helped; the Orthopaedic noted continuing pain in the right upper extremity (Tr. 290). On November 1, Plaintiff was still having back and right lower extremity pain, going into his foot, which limited his function; the doctor found no motor weakness in the lower extremities, but noted a positive straight

---

[6]**Error! Main Document Only.**Propoxyphene napsylate, more commonly known as Darvocet, is a class four narcotic used "for the relief of mild to moderate pain" and commonly causes dizziness and sedation. *Physician's Desk Reference* 1443-44 (52nd ed. 1998).

[7]**Error! Main Document Only.***Phenergan* is used as a light sedative. *Physician's Desk Reference* 3100-01 (52nd ed. 1998).

leg raise in the sitting position on the right (Tr. 316-19). Hall recommended an epidural and continued prescriptions for Lortab and Lyrica.

On December 1, 2010, Dr. Hall completed a functional capacity evaluation in which he indicated that Buttram was capable of sitting for two hours and standing and/or walking for two hours at a time while being able to sit for four hours and standing and/or walking for two hours during the course of an eight-hour day (Tr. 311-12). The doctor further found Plaintiff capable of lifting up to five pounds continuously, ten pounds frequently, and twenty-five pounds occasionally while able to carry up to five pounds continuously, ten pounds frequently, and twenty pounds occasionally. Dr. Hall indicated that Plaintiff could do the following: reach overhead, handle and finger (with either hand), and push and pull with either legs or arms continuously; climb, balance, stoop, crouch, and crawl occasionally; and kneel on a negligible basis. The doctor stated that Buttram could perform work activity full-time. Dr. Hall also completed a pain form indicating that Plaintiff had pain but that it would not prevent functioning in everyday or work activities, that physical activity would increase his pain without preventing adequate functioning of his tasks, and that his pain medications would cause some limitations but would not create serious problems (Tr. 314).

On December 27, 2010, Dr. Hudgens examined Buttram and noted that he agreed with Dr. Hall's functional capacity exam; he noted minimal tenderness across the lower lumbar area and mild pain on straight leg raise testing (Tr. 321-23). He recommended no changes to Plaintiff's conservative treatment or medications.

At the evidentiary hearing, Buttram testified that sitting for long periods (thirty-to-forty minutes) irritated his back (Tr. 39, 53; *see generally* Tr. 36-53). He stated that he took and picked up his granddaughter from daycare and gave her snacks. He visited with friends at their places of business. Buttram stated that he did not have the money to cover the co-pays for physical therapy since he was not working so he did not undergo that process. He does some housework, including washing dishes, vacuuming, washing clothes, and grocery shopping; he goes to church regularly on Sundays and Wednesdays. Plaintiff used to hunt and play ball, but he has had to give them up since the injury; he watches a lot of television. Buttram's pain is in his back, but it radiates into his right leg; numbness accompanies the pain into the foot. Pain keeps him from sleeping more than two or three hours at a time each night.

A VE testified at the hearing that she was familiar with the evidence of record as well as jobs existing in the nation and region (Tr. 53-61). She testified about the nature and

classifications of Buttram's past work. In answering specific questions by the ALJ, the VE testified that Plaintiff could not return to his past work, but that there were specific jobs that he could perform.

In her determination, the ALJ found that Plaintiff was not capable of performing his past relevant work, but that he could perform less than a full range of light work (Tr. 16-27). In reaching this conclusion, she gave controlling weight to the opinions of Dr. Hall, noting that they were consistent with the conclusions of Dr. Hudgens (Tr. 23). The ALJ found that Plaintiff's testimony was not fully credible (Tr. 24). The ALJ found the VE's testimony consistent with the Dictionary of Occupational Titles and adopted her conclusions as her own (Tr. 26). This concludes the relevant evidence of record.

In his first claim, Buttram asserts that the ALJ did not properly consider his pain. Plaintiff has specifically asserted that the ALJ did not properly apply Social Security Ruling 96-7p to the evidence of record (Doc. 18, pp. 5-7).

The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably

expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2013).

In her determination, the ALJ faithfully set out all of the

medical evidence of record. Though Buttram asserts that the ALJ "cherry-picked" the evidence (Doc. 18, p. 7), he has not demonstrated to this Court any evidence that the ALJ neglected to consider. The Court further notes that the ALJ did not discount any medical opinion of record. In finding that Buttram's pain was not disabling, the ALJ specifically relied on the opinion of treating physician, Dr. Hall (Tr. 23). The Court notes that Dr. Hudgens agreed with Hall's assessment of Plaintiff's abilities (*see* Tr. 321), a fact acknowledged by the ALJ (Tr. 23). These two Orthopedics provided most all of Buttram's treatment during the course of the period under consideration. They are also specialists. While Plaintiff may disagree with their ultimate conclusions about his pain and his ability to work, the ALJ gave them controlling weight.

In arguing his claims, Plaintiff has directed the Court's attention to the extensive medications that have been prescribed as well as the different medical regimens undergone to alleviate his pain (Doc. 18, pp. 9-10). He has also pointed to his own subjective complaints (Doc. 18, pp. 7-8).[8]

The ALJ found that Buttram's claims regarding his pain and limitations were not credible to the extent alleged (Tr. 24). In doing so, the ALJ pointed out the inconsistencies in his own

[8]The Court will discuss Plaintiff's first and second claims together as they are so closely linked.

testimony and with the medical records of his doctors. However, it is apparent that the ALJ relied primarily on the conclusions of Plaintiff's treating physician who determined that, in spite of the pain that he suffered and the medical regimen he was undergoing to relieve that pain, Buttram was able to work.

The Court finds substantial support for the ALJ's decision. In reaching this conclusion, the Court finds that the ALJ properly considered case law, regulatory law, and rulings entered by the Social Security Administration.[9] Plaintiff's assertion that the ALJ did not properly consider his pain, and in the process improperly discounted his testimony of pain and limitations, is without merit.

Buttram has also claimed that the ALJ posed an incomplete hypothetical question to the VE (Doc. 18, p. 10). The Eleventh Circuit Court of Appeals has held that an ALJ's failure to include severe impairments suffered by a claimant in a hypothetical question to a vocational expert to be reversible error where the ALJ relied on that expert's testimony in reaching a disability decision. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). More recently, in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1181 (11th cir.

---

[9]The Court has re-familiarized itself with Social Security Ruling 96-7p, but finds nothing there that suggests that the ALJ has not properly considered everything that should be evaluated in this record. Buttram has not demonstrated any such failing.

2011), the Eleventh Circuit Court of Appeals held that, after determining that a claimant had a moderate limitation in maintaining concentration, persistence, or pace, an ALJ had to either determine that the limitation would not affect the claimant's ability to work or include that limitation as part of the hypothetical question to the VE.

At the evidentiary hearing in this action, the ALJ asked the VE about Buttram's previous work. The ALJ then posed a hypothetical question to the VE, stating as follows:

> I would like for you to assume an individual of the same age, education, work background as the claimant, and further assume that the individual could sit for up to four hours per eight-hour workday, could stand for two hours per eight hour workday, and walk for two hours per eight-hour workday. But the individual should not sit, stand, or walk for more than two hours at any one time. The individual could continuously lift and carry up to five pounds, frequently lift and carry up to ten pounds, and occasionally life [sic] and carry up to 20 pounds. The individual could climb, balance, stoop, crouch, and crawl, but should not kneel at all. The individual could continuously reach, handle, finger, and push and pull with the bilateral upper and lower extremities. Individual could only occasionally perform activities involving marked changes in temperature and humidity, exposure to dust, fumes, and gases, noise, work in proximity to moving mechanical parts, or in high exposed places. He could only occasionally drive automotive equipment. Would you think that that individual would be capable of performing any of the claimant's past work?

(Tr. 57-58).[10] The VE testified that Plaintiff could not do any of his past work, but could perform the jobs of security guard, dispatcher, and general office clerk (Tr. 58-59). The VE further stated that the individual would be able to sit and stand periodically during the day with these jobs (Tr. 59-60). In the second hypothetical, the VE was to assume the same restrictions as in the first hypothetical, but further "assume that this individual due to pain, potential medicinal side effects and other factors would have mild to moderate impairment in terms of concentration, persistence or pace, which [was described] as being off-task or a non-productive pace for approximately up to five percent of the workday" (Tr. 60). The VE stated that the individual would still be able to perform those same jobs (Tr. 60).

Buttram's objection to this second hypothetical is that the "ALJ arbitrarily determined that claimant's [sic] would be off-task or non-productive for up to *five percent* of the workday notwithstanding the claimant's testimony and the medical evidence indicating that claimant's pain and side effects from his medication would *significantly* interfere with his ability to work" (Doc. 18, p. 10) (emphasis in original).

---

[10]The Court notes that this hypothetical tracks the limitations found in the physical capacities evaluation completed by Dr. Hall (*see* Tr. 311).

The Court finds no error in the ALJ's hypothetical question or in her reliance on the VE's answer. The ALJ, in this hypothetical, has acknowledged that Plaintiff may have minor concentration, persistence, and pace issues and tried to determine whether Buttram can work through them, determining that he can. Plaintiff again ignores the fact that her two Orthopaedic physicians have indicated that she can work in spite of her pain and limitations. The doctors' conclusions have been disputed by no medical source in this record. Plaintiff's statements of inability to work are insufficient to rebut the doctors' conclusions.

Buttram has raised three different claims in bringing this action. All are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED.** Judgment will be entered by separate Order.

DONE this 18th day of July, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE